JUDGE WOODS

BRESSLER, AMERY & ROSS, P.C.
Brian F. Amery (BA 7144)
Mark D. Knoll (MK 5343)
17 State Street
New York, New York 10004
Attorneys for Plaintiffs,
  Fidelity Brokerage Services LLC
  and National Financial Services LLC

15 CV 2210



IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **FIDELITY BROKERAGE SERVICES LLC and NATIONAL FINANCIAL SERVICES LLC,** | : : : : | Civil Action No. |
| **Plaintiffs,** | : : | |
| v. | : : | |
| **THE FINANCIAL INDUSTRY REGULATORY AUTHORITY ("FINRA"), PETER E. DEUTSCH and WILLIAM J. DEUTSCH,** | : : : : : | |
| **Defendants.** | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FIDELITY BROKERAGE SERVICES LLC AND NATIONAL FINANCIAL SERVICES LLC FOR AN ORDER TO SHOW CAUSE DIRECTING AN EXPEDITED HEARING AND *IN CAMERA REVIEW* OF MATERIALS WITHHELD UNDER THE BANK SECRECY ACT, 31 U.S.C. § 5318(g)**

---

INTRODUCTION

The Currency and Foreign Transactions Reporting Act of 1970 (which legislative framework is commonly referred to as the "Bank Secrecy Act" or "BSA") requires U.S. financial institutions to assist U.S. government agencies to detect and prevent money laundering. Specifically, the act requires financial institutions to report suspicious activity that might signify

1

2525947_1

money laundering, tax evasion, other criminal activities, or "any suspicious transaction relevant to a possible violation of law or regulation."31 C.F.R.§ 103.19. The Bank Secrecy Act, as discussed in more detail below, prohibits financial institutions and their employees from responding to certain questions that could disclose whether certain regulatory filings (including Suspicious Activity Reports, or "SARs") have been made, or the contents of any such filings made or contemplated.

Plaintiffs Fidelity Brokerage Services LLC ("Fidelity") and National Financial Services LLC ("NFS") are respondents in an arbitration proceeding pending in New York City before the Financial Industry Regulatory Authority ("FINRA") captioned *Peter E. Deutsch and William J. Deutsch v. Fidelity Brokerage Services LLC and National Financial Services LLC*, FINRA Dispute Resolution Case No. 12-02759 (the "Arbitration"). In the Arbitration, Plaintiffs have been ordered by the Arbitration Panel to seek judicial review of Plaintiffs' withholding of certain documents and the interposition of certain testimonial objections pursuant to the Bank Secrecy Act. Therefore, in order to comply with the order of the Arbitration Panel, Plaintiffs have filed this Motion for an Order to Show Cause and Directing an Expedited Hearing and *In Camera* review by the court of (i) twenty-eight (28) documents withheld or redacted under the Bank Secrecy Act, and (ii) certain testimonial objections raised by Plaintiffs during the hearing.

## BACKGROUND

The Arbitration involves claims that in July 2012, Fidelity improperly prevented Peter and William Deutsch ("Claimants") from continuing to buy shares in a Chinese micro-cap company, China Medical Technologies Inc. ("China Medical"). Plaintiffs have raised several defenses to the claims raised in the Arbitration. The Arbitration is currently in the hearing stage

2525947_1

and so far there have been twenty hearing days. The hearing is scheduled to resume on April 14, 2015.

Prior to the hearing, Plaintiffs produced thousands of documents to the Claimants pursuant to the discovery provisions of FINRA's Code of Arbitration Procedure, including documents related to the Plaintiffs' factual investigation into: (i) the Deutsches' trading activity, (ii) the activities of the Deutsches' third-party advisor (AER Advisors LLC),[1] and (iii) the underlying company, China Medical. During the course of the hearing, Claimants have called seven Fidelity witnesses, all of whom testified extensively about the Plaintiffs' investigation into the events that led to the determination not to permit continued purchases of China Medical stock by the Claimants.

In connection with the questioning of one Fidelity witness, Christopher Janes, an employee within Fidelity's Credit Risk group at the time of the events who was among those investigating the Claimants' activities, Plaintiffs objected to a line of questioning by Claimants' counsel that Fidelity believed called for the disclosure of confidential nonpublic information (*i.e.*, information that may disclose or tend to disclose whether or not a Suspicious Activity Report, or SAR, had been filed by Fidelity) that cannot be released under the Bank Secrecy Act, 31 U.S.C. § 5318(g)(2)(A)(i), and the applicable federal regulation, 31 C.F.R. §1023.320 (the "Testimonial Objections").

Claimants' contested the assertion of the privilege under the Bank Secrecy Act (the "BSA Privilege") and filed a motion to compel, arguing that the objections were "overbroad and legally untenable." Claimants conceded that the BSA prevented Fidelity and NFS from disclosing any SAR filing, or even information that would reveal the existence of a SAR filing.

---

[1] AER is not affiliated with Fidelity or NFS.

3

Fidelity and NFS opposed the Motion to Compel, citing applicable provisions of the Bank Secrecy Act (and accompanying regulations). In accordance with the Bank Secrecy Act, as set forth in Plaintiffs' brief to the Panel, Respondents objected to any question that called for the disclosure of confidential nonpublic information that cannot be released under federal regulations 31 CFR § 1023.320(e)(1)(i),[2] and 31 U.S.C. § 5318(g)(2)(A)(i). Under applicable federal law, Plaintiffs argued that they could not, including in the context of civil litigation, disclose any such filing or confirm or deny whether any such filing exists, or disclose information which would tend to reveal whether or not such a filing had, or had not, been made or contemplated (hereafter the "SAR Privilege").

On February 23, 2015, the Arbitration Panel provided the parties with its Order, dated February 16, 2015 (the "Panel Order"). The Panel Order reads as follows in full:

> BACKGROUND: During a hearing session held earlier in this case, Respondents invoked a U.S. Treasury Regulation involving suspicious activity (SAR) in refusing to allow a line of questioning during adverse direct testimony by a Fidelity witness. Subsequently, Claimant's filed a Motion to Compel the disclosure of the alleged important withheld information on the grounds that Respondent's action was *overly broad* and *legally untenable*.
>
> ORDER: Upon deliberation, the Panel has unanimously decided to **grant** the Motion to Compel, thus giving Claimants access to non-SAR related material thought to be withheld and leave to judicial review, if Respondents choose that course, the legitimacy of their stance. Compliance with this Order should become effective by no later than March 25, 2015 when the final hearings currently scheduled are due to commence.

Emphasis in original. A copy of the Panel's Order is annexed to the Knoll Declaration as Exhibit A. In response to a clarifying question from Plaintiffs about the "judicial review" element of the Order, the Chairman of the Panel confirmed that the "judicial review" contemplated was an "*in*

---

[2] "Any broker-dealer, and any director, officer, employee, or agent of any broker-dealer that is subpoenaed or otherwise requested to disclose a SAR or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information, citing this section and 31 U.S.C. 5318(g)(2)(A)(i), and shall notify FinCEN of any such request and the response thereto." 31 CFR § 1023.320(e)(1)(i)

4

2525947_1

*camera* inspection by the Court to determine what should or should not be disclosed." See Knoll Declaration at Exhibit B, Hearing Transcript at p. 6, lines 6-14.

In response to the Order, Fidelity and NFS have filed the instant Complaint and Order to Show Cause respectfully requesting that the Court conduct an *in camera* review of the hearing transcripts related to the Testimonial Objections as well as that limited number of additional materials withheld in discovery by Fidelity and NFS under the belief that they are prevented from disclosing those materials under the relevant sections of the Bank Secrecy Act and related federal regulations (the "Withheld Materials") and declare, pursuant to 28 U.S.C. §2201(a), whether the Testimonial Objections and the Withheld Materials are subject to the SAR Privilege.

## ARGUMENT

### AN EXPEDITED JUDICIAL REVIEW OF THE TESTIMONIAL OBJECTIONS AND WITHHELD DOCUMENTS IS NECESSARY IN ORDER TO PREVENT POTENTIALLY IMPROPER DISCLOSURES UNDER THE BANK SECRECY ACT

#### A. *An In Camera Review is Necessary to Comply with the Arbitration Panel Order and to Confirm that the Withheld Materials and Testimonial Objections Have Been Properly Interposed in the Arbitration*

The improper disclosure of whether or not a Suspicious Activity Report ("SAR") has been filed subjects covered financial institutions and their employees to severe potential criminal penalties. See, 18 U.S.C. § 5322(a) (penalties for violations include fines of up to $250,000 and imprisonment for up to five years). Because improper disclosure of a SAR not only involves severe penalties, but also because such disclosures could impede the investigation of illegal activity by agencies of the United States government, financial institutions, including Fidelity and NFS, take their obligations under the Bank Secrecy Act extremely seriously.

In connection with the Testimonial Objections and the Withheld Documents, Fidelity and NFS have taken the position recommended by the Bank Secrecy Advisory Group regarding the

disclosure of SARs and underlying suspicious activity. In guidance issued in October 2000, the BSA Advisory Group stated:

> Federal law (31 U.S.C. 5318(g)(2)) prohibits the notification of any person that is involved in the activity being reported on a SAR that the activity has been reported. This prohibition effectively precludes the disclosure of a SAR or the fact that a SAR has been filed. However, this prohibition does not preclude, under federal law, a disclosure in an appropriate manner of the facts that are the basis of the SAR, <u>so long as the disclosure is not made in a way that indicates or implies that a SAR has been filed or that the information is included on a filed SAR</u>.

Bank Secrecy Act Advisory Group, <u>SAR Activity Review</u>, p. 28 (October 2000)[3] (emphasis added). In August 2004, the BSA Advisory Group expanded on this prior guidance to note that, even when a request does not specifically call for the production of a SAR, "the financial institution should object to the [request] on the grounds that some of its responsive material consists of confidential supervisory information." Bank Secrecy Advisory Group, <u>SAR Activity Review</u>, p. 45 (August 2004)[4].

The Withheld Documents could not be disclosed to the FINRA Arbitration Panel for their assessment of the propriety of the BSA Privilege because to provide these documents to a self-regulatory organization, which is not an agency of the United States government, would violate the disclosure prohibitions of the Bank Secrecy Act just as surely as providing the documents to a third party.

Because the materials themselves cannot be disclosed to the Defendants, even in the context of ongoing litigation, a more detailed description of the Withheld Documents and basis for the Testimonial Objections will be provided to the Court, along with copies of the Withheld Documents following the issuance of an Order directing that an *in camera* review be conducted. **Plaintiffs stress that the submission of these documents is solely for the purposes of**

---

[3] Available at http://www.fincen.gov/news_room/rp/files/sar_tti_01.pdf.
[4] Available at http://www.fincen.gov/news_room/rp/files/sar_tti_07.pdf

**determining whether the privilege for SAR-related materials applies to the materials presented to the Court and should not be construed as Plaintiffs either admitting or denying whether or not a SAR has been filed.**

Plaintiffs seek an expedited hearing and order directing the *in camera* review of the documents because the applicable case law and guidance leaves unsettled whether or not those materials are prohibited from disclosure. And, given that Plaintiffs face potentially severe penalties should such materials be produced pursuant to a good-faith, but incorrect understanding of the prohibitions of the Bank Secrecy Act, appropriate judicial review is necessary.

Distinguishing between non-protected underlying factual information and those other materials or documents prohibited from being disclosed under the Bank Secrecy Act is difficult, and no bright-line test has been uniformly established within the federal courts. For example, in Lesti v. Wells Fargo Bank NA, the District Court for the Middle District of Florida wrote that:

> [the] SAR privilege protects against disclosure of "[a] SAR, or any information that would reveal the existence of a SAR[.]" 12 C.F.R. §21.11(k). However, "supporting documentation" giving rise to a SAR that is generated or received in the ordinary course of business is discoverable. Union Bank of California v. Superior Court, 130 Cal. App. 4th 378, 29 Cal. Rptr. 3d 894, 901 (Cal. 1st DCA 2005). "Thus, transactional and account documents such as wire transfers, statements, check and deposit slips are the types of documents generated in the ordinary course of business that are subject to discovery [citation omitted]. Such documents would be prepared regardless of whether a financial institution has an obligation to report suspicious activity to the federal government." Id. The Court followed Cotton v. PrivateBank & Trust Co., 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002) which found as follows: There are two types of supporting documents. The first category represents the factual documents which give rise to suspicious conduct. These are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business. The second category is documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself. These are not to be produced because they would disclose whether a SAR has been prepared or filed. Id.
>
> This Court also followed the reasoning in Regions Bank v. Allen, 33 So.3d 72, 76-77 (Fla. 5th DCA 2010). The court in Regions Bank found that a draft SAR

> or internal memorandum prepared as part of a financial institution's process for complying with federal reporting requirements is generated for the specific purpose of fulfilling the institution's reporting obligation. These types of documents fall within the scope of the SAR privilege because they may reveal the contents of a SAR and disclose whether a SAR has been prepared or filed. Unlike transactional documents, which are evidence of suspicious conduct, <u>draft SAR's and other internal memoranda or forms that are part of the process of filing SAR's are created to report suspicious conduct.</u> [citation omitted]

297 F.R.D. 665, 667-668 (M.D. Fla. 2014). Ultimately, the court in <u>Lesti</u> instructed that Wells Fargo "shall not produce documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself <u>or internal memorandum prepared as part of a financial institution's process for complying with federal reporting requirements</u>." <u>Id.</u> at 668 (emphasis added).

A recent decision[5] by Magistrate Judge Gorenstein (on very different facts but involving similar issues under the Bank Secrecy Act) is also illustrative of the difficult questions regarding whether and to what extent certain materials should be withheld under the SAR Privilege. In <u>Wultz v. Bank of China Limited</u>, 2014 U.S. Dist. LEXIS 156541, 11 Civ. 1266 (SAS)(GWG) (November 5, 2014), the court was asked to determine whether the nearly wholesale withholding by Bank of China of approximately 10,000 documents related into their investigation into certain activity were protected by the SAR Privilege. Using a much broader interpretation of the SAR Privilege than that asserted by Fidelity in the Arbitration, in <u>Wultz</u> the Bank of China argued that "documents produced **at each step of [their investigatory] process** are protected by the SAR Privilege since they result from the implementation of BOC's policies and procedures for the filing of SARs." <u>Wultz</u>, 2014 U.S. Dist. LEXIS at *5-6 (emphasis added). In turn, the plaintiffs argued that "the documents are not protected by the SAR privilege because they do not reveal whether or not a SAR was actually filed." <u>Id.</u> at *6. Ultimately, the court rejected Bank of

---

[5] The <u>Wultz</u> decision was issued on November 5, 2014. Plaintiffs first asserted the Testimonial Objections several months earlier on July 8, 2014.

8

China's broad interpretation of the SAR Privilege and held that the Privilege protected from disclosure "evaluative documents, presumably generated by or for the committee involved in the final SAR decisionmaking process, that reference the SAR requirements specifically as to the particular customer or transactions involved[.]" Id. at *13.

Importantly, contrary to the overbroad position taken by Bank of China, Fidelity has produced thousands of documents and emails related to the investigation in the Arbitration. Compared to the thousands of documents produced, only 28 have been either redacted or withheld under the SAR privilege. Moreover, Plaintiffs did not argue before the Arbitration Panel, and do not argue here that the underlying factual information related to the investigation into the Claimants' activities is protected from disclosure. Indeed, not only has Fidelity produced all the documents relating to the underlying factual investigation, but during the hearing thus far, Fidelity witnesses have testified extensively about the investigation into the Deutsches' activities. In sum, there is no additional factual information among the materials withheld. Thus, the *in camera* review is requested to assess the applicability of the SAR privilege to a very small universe of documents (28) that were generated over the span of a few weeks.

Without the requested *in camera* review, there is a significant risk that Plaintiffs could be placed in the untenable position of, on the one hand, maintaining the assertion of the privilege and risking an adverse inference from the Panel, or, on the other hand, disclosing the materials to the Panel and/or Claimants and risking potentially severe criminal penalties. A review by the Court of this matter addresses these concerns in such a way as to minimize the risks of a violation of federal law to all involved.

2525947_1

### B. An Expedited Review is Warranted Under the Circumstances

In a declaratory judgment action, such as here, the Court has broad discretion to order an expedited hearing. In fact, Federal Rule of Civil Procedure 57, which governs declaratory judgment actions, specifically provides that "[t]he court may order a speedy hearing of a declaratory judgment action." Fed. R. Civ. P. 57. According to the Advisory Note for Rule 57 as adopted in 1937, "A declaratory judgment is appropriate when it will 'terminate the controversy' giving rise on undisputed or relatively undisputed facts, *it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion…[.]*" (emphasis added). As one court in this District has found: "District courts have discretion to hold prompt hearings or trials in declaratory judgment cases, as indeed they do in all other cases, regardless of whether the facts are mostly undisputed." United States v. Stein, 452 F. Supp. 2d 230, 270 (S.D.N.Y. 2006)(Kaplan, U.S.D.J.).

In this case, an expedited review is warranted. The Arbitration resumes hearings on April 14, 2015. Claimants have advised Plaintiffs and the Arbitration Panel that they have a limited number of witnesses remaining to be called, and that one expert witness in particular will not be called until there is a final resolution of the SAR Privilege issue. Thus, an expedited hearing will further the efficient resolution of the arbitration proceeding. Further, the issues related to the assertion of the SAR Privilege are matters of law and Claimants have already briefed the issues before the Arbitration Panel. Therefore, it is not expected that significant additional briefing or argument before the Court would be necessary.

### C. The Pleadings and Documents in Connection with Plaintiffs' Motion Should be Filed Under Seal

Plaintiffs recognize that there is a strong presumption against sealing court records from the public. See Nixon v. Warner Comm'ns, Inc., 435 U.S. 589, 597-99, 98 S. Ct. 1306, 55 L. Ed.

2d 570 (1978). However, "[s]uch a presumption may be overcome by demonstrating that sealing will further substantial interests." See N.M.I. v. Sadowski, 2015 U.S. Dist. LEXIS 32371 (E.D.N.Y. Mar. 16, 2015)(citing Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006)).

In this case, the materials in question, along with the circumstances of the interposition of the Testimonial Objections, all center upon the applicability of the SAR Privilege. The Bank Secrecy Act and the requirements its statutory and regulatory regime imposes on financial institutions have led to the development of sophisticated, and highly confidential, policies and practices related to the BSA. This sort of information is not such that should be in the public domain, as its disclosure may tend to reveal the methods by which institutions specifically fulfill their responsibilities under the BSA. See, e.g., Casissa v. First Republic Bank, 2012 U.S. Dist. LEXIS 80683, 5-6 (N.D. Cal. June 11, 2012) (granting application to seal certain documents that related to the bank's confidential aspects of its Anti-Money Laundering/Bank Secrecy Act program, because, if disclosed, this information would provide the general public insight into how it detects suspicious activity). Therefore, the presumption against sealing in this case is outweighed by the fact that disclosure of the underlying pleadings and documents would tend to undermine the purposes of the BSA.

## CONCLUSION

The requested in camera review is sought in order to: (1) comply with the Arbitration Panel Order; (2) provide appropriate declaratory relief to the Parties in light of the potentially conflicting interpretations of the scope of the SAR Privilege; and (3) to ensure that Plaintiffs are not subjected to potentially substantial civil and criminal penalties associated with an improper disclosure of protected materials under the Bank Secrecy Act. At the direction of the Court, Plaintiffs will promptly provide the documents for the *in camera* review and will be available at a time directed by the Court to provide any additional information.

Dated: New York, New York
       March 24, 2015

Respectfully submitted,

By: _____
    Brian F. Amery (BA 7144)
    Mark D. Knoll (MK 5343)

BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York 10004
212-425-9300

Attorneys for Plaintiffs,
  Fidelity Brokerage Services LLC
  and National Financial Services LLC

2525947_1